IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| ULYSSES PRYOR, | ) | |
|                   Plaintiff, | ) | No. 07 C 2479 |
| v. | ) | |
| | ) | JUDGE PALLMEYER |
| CITY OF CHICAGO, a municipal corporation; EDWARD MCGOVERN, as a Chicago Police Officer and as an individual; TODD REYKJALIN, | ) ) ) | MAGISTRATE JUDGE DENLOW |
| as a Chicago Police Officer and as an individual, | ) ) | Jury Demand |
|                   Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants City of Chicago, and police officers Edward McGovern and Todd Reykjalin, by their attorneys of record, submit this memorandum of law in support of their motion for summary judgment as to Plaintiff's Third Amended Complaint ("Complaint").

## INTRODUCTION

Plaintiff Ulysses Pryor ("Pryor") alleges that on March 27, 2006, he was in an alley behind his residence at 4508 W. Adams, and two Chicago police officers detained and handcuffed him, used excessive force by grabbing and shoving him, then let him go and drove off. **Defendants' Local Rule 56.1 Statement ("Def. 56.1") Ex. A, Complaint ¶¶ 6-12.** As a result of these actions, Pryor brings suit against Officers McGovern and Reykjalin under §1983 for excessive force (Count I) and false arrest (Count II) in violation of the 4th Amendment and under state law for false arrest and battery (Count III).[1] As the officers' employer, the City is sued under the doctrine of *respondeat superior* on the state law claims.

---

[1] The Third Amended Complaint misnumbers Count III as Count IV.

1

## **STANDARD OF REVIEW**

Fed.R.Civ.P. 56(c) provides a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Once a motion for summary judgment has been made and properly supported, the non-movant has the burden of setting forth specific facts showing the existence of a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), *cert. denied*, 484 U.S. 1066 (1988). "Merely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989).

While "[a]ll factual inferences are to be taken against the moving party and in favor of the opposing party," *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 (1980), only reasonable inferences, and not all conceivable inferences, will be drawn. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)(summary judgment is appropriate where the evidence supporting the non-movant "is merely colorable or is not significantly probative"). Even the "existence of a factual dispute will not bar summary judgment unless 'the disputed fact is outcome determinative under governing law.'" *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987) (citation omitted)).

A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson*, 477 U.S. at 248. "To successfully oppose the motion for summary judgment, the non-movant must do more than raise a 'metaphysical doubt' as to the material facts and instead must present definite competent evidence to rebut the motion." *Rossi v. Bower*, No. 01 C 2503, 2002 WL 1160151 (N.D. Ill.),

2

quoting *Wolf v. Northwestern Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001), and citing *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001).

## SUMMARY OF MOTION

For purposes of summary judgment only, Officers McGovern and Reykjalin do not dispute that the incident Pryor complains occurred, only that they had no involvement in the incident. Based on testimony provided by Pryor and his two witnesses, Hector Negron and Raynard Holloway, Pryor cannot meet his burden of proving that Officers McGovern and Reykjalin are the officers who allegedly detained and abused him. The undisputed facts fail to prove the car driven by the allegedly abusive officers was the car assigned to Officers McGovern and Reykjalin. In addition, a search of police department computer systems show Officers McGovern and Reykjalin did not run Pryor's name through their car-based computer terminal looking for warrants. Moreover, police records indicate Officers McGovern and Reykjalin were miles away responding to another call at the time Pryor claims he was detained. Finally, the physical and clothing descriptions provided by Pryor and his witnesses do not match Officers McGovern and Reykjalin. Based on the undisputed facts, Officers McGovern and Reykjalin did not participate in and were not present at the time of the alleged incident. Therefore, Officers McGovern and Reykjalin, as well as the City, seek entry of judgment in their favor on all counts.

## ARGUMENT

**I. PRYOR'S §1983 CLAIMS ARE NOT ACTIONABLE AGAINST OFFICERS McGOVERN AND REYKJALIN BECAUSE THEY DID NOT COMMIT THE CONSTITUTIONAL VIOLATIONS**

It is well established that "[s]ection 1983 creates a cause of action based upon personal liability and predicated upon fault." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); see also *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1999). To prevail on a §1983 action, the

plaintiff must prove the defendant was directly at fault. *Starzenski v. City of Elkhart*, 87 F.2d 872, 879 (7th Cir. 1996). Liability under §1983 does not attach unless the individual defendant personally caused or participated in a constitutional deprivation. *Harper v. Albert*, 400 F.3d 1052, 1062 (7th Cir. 2003).

When a plaintiff cannot present enough evidence to convince a rational jury that the defendant officers had anything to do with plaintiff's alleged constitutional injury, summary judgment is appropriate. *See Stepan v. City of Evanston*, 1993 WL 210534 at *4 (N.D.Ill.) Because Pryor cannot sustain his burden to establish that Officers McGovern and Reykjalin were the officers who allegedly detained and abused him in violation of his 4th Amendment rights, they are entitled to summary judgment.

### A.    The Incident According to Pryor[2]

The incident Pryor complains of occurred on March 27, 2006 at approximately 6:10-6:15 p.m. **Def. 56.1 at ¶¶ 4, 6.** He arrived home from work at 5:50 p.m., and his neighbor, Hector Negron, immediately telephoned. **Def. 56.1 at ¶ 5.** Pryor told Hector he would meet him outside, and about 15-20 minutes later, Pryor walked out his back door into the alley and headed towards Hector's house. **Def. 56.1 at ¶ 6.** To get to Hector's house through the alley, Pryor had to cross Kilbourn Street. **Def. 56.1 at ¶¶ 5, 7.** When he reached the end of the alley, a blue and white, marked Chicago police car driving northbound on Kilbourn stopped at the mouth of the alley and blocked Pryor's path. **Def. 56.1 at ¶ 7.**

After the police car stoped at the mouth of the alley, Pryor contends two officers jumped out of the car, grabbed him, twisted his left arm, took everything out of his pockets, threw him on the car, handcuffed him, put him in the back seat of the police car and ran his name through the computer looking for outstanding warrants. **Def. 56.1 at ¶ 8.** After about 5 minutes, Pryor was

---

[2] For purposes of summary judgment, Pryor's version is taken as true.

4

unhandcuffed, let out of the car, and the officers drove off. **Def. 56.1 at ¶¶ 8, 9.** Pryor's neighbor, Hector, and Pryor's cousin, Raynard Holloway, claim to have witnessed the incident. **Def. 56.1 at ¶¶ 36-40, 45-48.**

### B. Officers McGovern and Reykjalin cannot be connected to the police car Pryor contends was involved in this incident

Pryor was unable to get the names or star numbers of the officers, **Def. 56.1 at ¶ 21,** but wrote down the 4 digit beat number displayed on a black plate with white numbering, which is fixed to the top of every marked squad car. **Def. 56.1 at ¶ 26.** This plate is elevated so that it is plainly visible. **Def. 56.1 at ¶ 54.** Although Pryor does not clearly remember the 4 digit beat number that he claims he wrote down, he believes the number was 1123, and that number pops into his head repeatedly, whenever he sees a police car. **Def. 56.1 at ¶ 27.** Pryor gave the number to his attorneys at Lunz and Jersey.[3] Pryor has no idea how Officers McGovern and Reykjalin were identified as defendants in this case. **Def. 56.1 at ¶¶ 25, 26.** Indeed, Pryor admitted he has no knowledge of whether they are the correct officers. **Def. 56.1 at ¶ 25.** In *Horton v. Wilson*, 2002 WL 31719596 at *5 (N.D. Ill.), summary judgment was granted when the plaintiff offered little besides speculation and vague conjecture as to the involvement of the defendant officers.

On March 27, 2006, Officers McGovern and Reykjalin worked from 4:00 p.m. – 12:30 a.m., in a blue and white, marked Chicago police car displaying beat number 1114. **Def. 56.1 at ¶¶ 53, 54.** Even assuming for purposes of summary judgment that Pryor's account is true, he believes quite strongly that the officers involved in this incident were driving a car displaying

---

[3] Lunz and Jersey are not Pryor's present attorneys; Lunz and Jersey were granted leave to withdraw on May 22, 2008. (Dckt. # 39 )

beat number 1123, not beat number 1114. **Def. 56.1 at ¶ 27.** Consequently, Pryor's testimony about the car driven by the officers fails to implicate Officers McGovern and Reykjalin.

Pryor's witnesses, Holloway and Hector, do not help him. Although Holloway testified the officers were driving a standard blue and white squad car, he noticed no distinguishing marks on the car – no license plate number or any number of any kind. **Def. 56.1 at ¶ 37.** And Hector (who is a car mechanic) testified the officers were driving an unmarked, dark gray Crown Victoria – a "regular detective car." **Def. 56.1 at ¶ 48.** Consequently, regardless of whether the officers Pryor complains of were driving a marked car displaying beat 1123 or an unmarked "detective" car, they were not Officers McGovern and Reykjalin.

### C. Officers McGovern and Reykjalin did not run Pryor's name through a computer looking for warrants

Pryor testified that while sitting handcuffed in the back seat of the police car, the driver officer (the one who grabbed him) ran his name through the computer in the car looking for outstanding warrants. **Def. 56.1 at ¶ 9.** Pryor knows this because the officer asked him if he had any warrants and because Pryor actually saw his name on the computer. **Def. 56.1 at ¶ 9.**

According to a data search of the Chicago Police Department computer systems, neither Officer McGovern nor Officer Reykjalin ran Pryor's name through the databases available to car-based computer terminals on March 27, 2006. **Def. 56.1 at ¶¶ 12, 14, 15.** In fact, Officers McGovern and Reykjalin did not run any names at all for warrants on that date. **Def. 56.1 at ¶ 13.** Thus, if an officer ran Pryor's name looking for warrants, as he alleges, that officer was not Officer McGovern or Officer Reykjalin.

### D. Officers McGovern and Reykjalin were responding to another call at the time Pryor claims he was detained

Pryor alleges he got home from work around 5:50 p.m. and went outside to meet Hector about 15-20 minutes later. **Def. 56.1 at ¶¶ 4, 6.** Pryor's house is the third house from Kilbourn along the alley. **Def. 56.1 at ¶ 4.** Allowing another few minutes for Pryor to reach the mouth of the alley at Kilbourn places the time of the incident approximately 20-25 minutes after Pryor got home from work, or 6:10-6:15 p.m.

Officers McGovern and Reykjalin could not have been present in the vicinity of Adams and Kilbourn at around 6:10-6:15 p.m., because from 5:48 – 6:48 p.m., they were responding to a call involving a person with a gun that evolved into a mental health transport to Mt. Sinai hospital. **Def. 56.1 at ¶¶ 60-66, 68, 69, 70.** According to records maintained by the City's Office of Emergency Management and Communications ("OEMC"), a 911 caller reported a person with a gun at 4358 W. Cortez. **Def. 56.1 at ¶¶ 60, 65.** Later, the complainant reported a black male stripping in the middle of the street and running through the alley in the vicinity of 4358 W. Cortez. **Def. 56.1 at ¶ 61.** Officers McGovern and Reykjalin assisted with this call. **Def. 56.1 at ¶¶ 60, 62, 64-66, 71.**

OEMC records indicate that at 5:48 p.m., Unit 1114[4] (Officers McGovern and Reykjalin) was assigned to assist Unit 1113 on this call of a person with a gun. **Def. 56.1 at ¶¶ 60, 65.** At 6:18 p.m., Unit 1114 (Officers McGovern and Reykjalin) informed OEMC dispatchers they were changing location from the area of 4358 W. Cortez to Mt. Sinai Hospital to assist in the transport of a person to Mt. Sinai Hospital for mental heath reasons.[5] **Def. 56.1 at ¶¶ 62, 66.** At 6:48 p.m., Officers McGovern and Reykjalin completed their assistance on this call, and Officer

---

[4] Beats and units are the same thing and are used interchangeably. **Def. 56.1 at ¶ 60.**
[5] In Officers McGovern and Reykjalin's experience, it is not unusual for multiple units to assist in a mental health transport due to safety considerations attendant to the unpredictable behavior of such persons. **Def. 56.1 at ¶ 67.**

7

McGovern notified the OEMC dispatcher that Unit 1114 was "clear" and available for other assignments. **Def. 56.1 at ¶¶ 63, 69, 70.**

Thus, at 5:48 p.m.– almost the precise time Pryor was arriving home from work – Officers McGovern and Reykjalin were on their way to 4358 W. Cortez. And at 6:18 p.m. – almost the precise time Pryor contends his name was being run through a computer while he was sitting in the back seat of their police car – Officers McGovern and Reykjalin were leaving the vicinity of 4358 W. Cortez and heading towards Mt. Sinai Hospital. Moreover, in traveling from the 4300 block of W. Cortez to Mt. Sinai, Officers McGovern and Reykjalin would not pass the alley at Adams and Kilbourn, which is west of both 4358 W. Cortez and Mt. Sinai Hospital. **Def. 56.1 at ¶ 73.** In addition, the alley at Adams and Kilbourn is more than 2 miles from 4358 W. Cortez and approximately 3.5 miles from Mt. Sinai Hospital. **Def. 56.1 at ¶ 72.**

Because Officers McGovern and Reykjalin were assigned to assist on a high priority gun call 20 minutes before Pryor's incident occurred, they could not have been the officers who detained Pryor. Nor is it reasonable to assume they would stop on their way to a serious gun call, grab Pryor for no reason, run his name for warrants and then continue on to 4358 W. Cortez. In *Anderson v. Liberty Lobby,* the Supreme Court instructed that in considering a motion for summary judgment only reasonable inferences, and not all conceivable inferences, are to be drawn from the evidence. 477 U.S. at 247-48.

### E. The descriptions of the officers do not implicate Officers McGovern and Reykjalin

#### 1. Pryor's descriptions of the officers

Pryor has been unable to provide a physical description of the allegedly abusive officers that sufficiently identifies them as Officers McGovern and Reykjalin. Rather, Pryor's

description of the officers' appearance and clothes is so vague and generic as to be virtually meaningless.

Pryor described the driver officer as white, about 5'10", with hair "all over his face" like a "twelve o'clock shadow." Pryor is unsure what color his hair was, does not know the color of the driver officer's eyes and is not sure if he was wearing glasses. Pryor thinks the driver officer weighed anywhere from 150-190 lbs, but probably weighed 190. **Def. 56.1 at ¶ 17.** Although Pryor testified he was grabbed by this officer and they were face-to-face, he is unable to provide any further detail. **Def. 56.1 at ¶¶ 18, 22.**

The physical description of the passenger officer is even more vague. Pryor thought the passenger officer "could have been" 6'0" or 6'1" and was a "big guy," weighing anywhere from 180-225, maybe 250. Pryor does not recall any facial hair and did not see any eyeglasses. Other than being white, he cannot provide any further description. **Def. 56.1 at ¶ 19.**

With regards to clothing, Pryor was uncertain whether the officers were wearing plain clothes or uniforms. **Def. 56.1 at ¶¶ 21, 22.** He testified neither officer was wearing a vest. **Def. 56.1 at ¶¶ 21, 23.** Both were wearing dark colors – blue or black. **Def. 56.1 at ¶¶ 21, 23.**

After Pryor gave his deposition, but before he attended Officers McGovern and Reykjalin's depositions, Pryor viewed two color photo arrays. **Def. 56.1 at ¶ 28.** One photo array contained a photograph of Officer McGovern, and the other photo array contained a photograph of Officer Reykjalin. **Def. 56.1 at ¶ 28.** Pryor was unable to identify either officer, claiming he could not identify either officer because he could "only see a face" and "they look totally different with clothes on." **Def. 56.1 at ¶¶ 29, 30.** Pryor further testified both officers were wearing "the black outfit"– black pants and black top. **Def. 56.1 at ¶ 20.** Given the generic physical description of the officers and their clothing and the wide weight range (150-190 lbs

9

and 180-250 lbs) it is not reasonable to believe an in person identification would be any more convincing.

At bottom, Pryor is only certain the driver officer was white, about his height (5'10") and wearing dark clothes. As to the passenger officer, Pryor is only certain he was white, taller than the driver officer (maybe 6'0-6'1") and wearing dark colors. Further, Pryor admitted "he has no idea" how Officers McGovern and Reykjalin were named as defendants and does not know if they are the officers who committed the acts he complains of. **Def. 56.1 at ¶ 25.** Based on this information, Pryor offers nothing but vague conjecture and speculation as to Officers McGovern and Reykjalin's involvement in this incident. *See Horton v. Wilson*, 2002 WL 31719596 at *4 (N.D. Ill.)(summary judgment granted to officer when plaintiff did not know who the officer was or why she was involved in the lawsuit).

### 2. Officers McGovern and Reykjalin do not match Pryor's descriptions

Although Officers McGovern and Reykjalin arguably fall within the exceedingly broad category of officers who are white and weigh between 150-250 lbs., together, they do not meet Pryor's clear delineation that one officer (the driver officer) was about his height (5'10") and shorter than the other officer (the passenger officer) who was "a big guy" 6'0" or 6'1". Officer McGovern is 6'0" and weighed a little less than 230 lbs in March 2006. **Def. 56.1 at ¶ 51.** Officer Reykjalin is also 6'0" and weighed between 200-215 lbs in March 2006. **Def. 56.1 at ¶ 52.**

Clearly, however, Officers McGovern and Reykjalin are distinguishable from the officers who allegedly detained Pryor by their clothing. On March 27, 2006, Officers McGovern and Reykjalin were working in uniform, consisting of dark blue pants and a powder blue Chicago Police Department shirt covered by a vest. **Def. 56.1 at ¶¶ 55, 57.** Neither officer was wearing

a coat over his shirt. **Def. 56.1 at ¶¶ 55, 57.** The distinctive powder blue shirt worn by Chicago police officers can hardly be mistaken for "all dark colors."

Moreover, Pryor testified he has been stopped and harassed by Chicago police officers more than a 1000 times. **Def. 56.1 at ¶ 24.** There can be no doubt Pryor knows exactly what Chicago police officer uniforms and vests look like. Had the officers he complains of in this lawsuit been in uniform, wearing a powder blue shirt with a protective vest – as Officers McGovern and Reykjalin were wearing – Pryor clearly would have seen it. Yet, at no time has Pryor testified that either officer was wearing the standard Chicago Police Department powder blue uniform shirt or a vest. Despite being face-to-face with the driver officer when he was grabbed, Pryor's testimony has consistently emphasized that the officers were wearing no vest and dark colored clothes – "everything was dark" "the black outfit" "black pants and a black top." **Def. 56.1 at ¶¶ 20, 22, 23.**

Again, Pryor's witnesses do not help him. Hector is clear that the officers he saw were not in uniform, but were wearing blue jeans with a black vest. **Def. 56.1 at ¶ 46.** Like Pryor, Holloway testified the officers were in dark colors, navy pants and standard issue leather jackets with bullet proof vests underneath their jackets.[6] **Def. 56.1 at ¶ 38.** However, neither Officer McGovern nor Officer Reykjalin would have been wearing a coat, especially a leather coat, as neither owns a police department leather coat. **Def. 56.1 at ¶¶ 55, 57.** Thus, Pryor and his witnesses establish that the officers Pryor complains of were not wearing powder blue uniform shirts, but rather regular street clothes – dark in color. Therefore, these officers could not have been Officers McGovern and Reykjalin.

---

[6] Holloway's reference to "standard issue leather jackets" indicates that he, like Pryor, is familiar with Chicago police attire.

11

When reviewing the record as a whole, there can be no doubt Pryor's claims against Officers McGovern and Reykjalin for violation of his constitutional rights are misplaced. Viewed in the light most favorable to Pryor, his testimony shows he was detained between 6:10-6:15 p.m. on March 27, 2006, at the mouth of the alley at Adams and Kilbourn by two white officers wearing dark clothes (not powder blue uniform shirts), no vests and one officer was taller than the other. These officers ran Pryor's name through their car-based computer looking for warrants and let him go. As the car drove off, Pryor noted the beat number – probably 1123 – displayed on the top of the car and wrote it down. Pryor has no idea how Officers McGovern and Reykjalin were named as defendants and was unable to identify them in a photo array.

Conversely, on March 27, 2006, Officers McGovern and Reykjalin were working beat 1114 in uniform, wearing protective vests over their standard issue Chicago Police Department powder blue shirts. Between 5:48-6:48, Officers McGovern and Reykjalin were responding to a high priority gun call and assisting with a mental health transport to Mt. Sinai Hospital. It is undisputed Officers McGovern and Reykjalin did not run Ulysses Pryor's name on their car-based computer terminal or on any police department computer. It is Pryor's burden to identify through discovery those defendants who violated his rights at the time in question. Failure to do so is fatal to his claim. *See Harper v. Albert*, 400 F.3d 1052, 1065-66 (7th Cir. 2003). Officers McGovern and Reykjalin are entitled to summary judgment on Pryor's 4th Amendment claims.

## II. PRYOR CANNOT SUCCEED AGAINST OFFICERS McGOVERN AND REYKJALIN OR THE CITY ON STATE LAW CLAIMS FOR FALSE ARREST AND BATTERY

### A. State law claims against Officers McGovern and Reykjalin

Pryor's state law claims of false arrest and battery should be dismissed for the same reasons discussed above – a reasonable trier of fact could not find Officers McGovern and

Reykjalin participated in the acts Pryor complains of. Officers McGovern and Reykjalin have no knowledge of the incident alleged in Pryor's complaint and they did not participate in any way in the alleged detention and abuse of Pryor. **Def. 56.1 at ¶¶ 58, 59.** Nor did they have any contact with Pryor on March 27, 2006. **Def. 56.1 at ¶¶ 58, 59.** Consequently, there is no evidence to support Pryor's claims against Officers McGovern and Reykjalin for false arrest or battery as alleged in Count III. Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, Officers McGovern and Reykjalin are not liable for any injury caused by the acts or omissions of another person. 745 ILCS 10/2-204 (2004).

### B. State law claims against the City

As to the state law claims directed at the City, summary judgment is appropriate if this Court grants summary judgment to Officers McGovern and Reykjalin. Under the Illinois Tort Immunity Act, the City is not liable to plaintiff if the defendant officers are not liable to plaintiff. *See* 745 ILCS 10/2-109 (2004). Thus, if Officers McGovern and Reykjalin are not liable on Pryor's state law claims, the City is not liable and is entitled to summary judgment on all claims brought against it.

## CONCLUSION

Pryor has had over two years to pursue discovery aimed at identifying the officers who allegedly detained and abused him. Yet, at the conclusion of discovery, he offers nothing substantial on which to peg his allegations that Officers McGovern and Reykjalin were involved in this incident. In the face of undisputed evidence that Officers McGovern and Reykjalin did not run Pryor's name for warrants, were assisting on another call, were wearing powder blue uniform shirts and working beat 1114, Pryor offers only a vague, generic physical description. This is too slender a reed upon which to support a finding in Pryor's favor by a rational trier of

fact. Because it is clear neither Officer McGovern nor Officer Reykjalin had any involvement in this incident, they – along with the City – are entitled to judgment in their favor on all claims.

Dated: August 19th, 2009

Respectfully submitted,

_s/ Patricia J. Kendall_
Patricia J. Kendall
Assistant Corporation Counsel
Attorneys for Defendants
30 N. LaSalle Street, Suite 1400
Chicago, Illinois 60602

30 N. LaSalle Street, Suite 1400
Chicago, Illinois 60602
(312) 744-5170
Atty. No. 06195253

## CERTIFICATE OF SERVICE

I hereby certify that I have caused true and correct copies of the above and foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to be sent to all attorneys of record via the court's electronic notification system on September 1, 2009.

_s/ Patricia J. Kendall_
Patricia J. Kendall