**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ULYSSES PRYOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07 C 2479 |
| ) | |
| CITY OF CHICAGO, a municipal ) | JUDGE PALLMEYER |
| corporation; EDWARD MCGOVERN, ) | |
| as a Chicago Police Officer and as an ) | |
| individual; TODD KREYKJALIN, as a ) | |
| Chicago Police Officer and as an ) | |
| individual, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**I.    Procedural History**

Plaintiff Ulysses Pryor alleges that, on March 27, 2006, he was wrongfully detained and injured by Defendants, Chicago Police Officers Edward McGovern and Todd Reykjalin. The Defendant officers deny having had any contact with Pryor during the evening in question, and contend that they were in fact responding to a call elsewhere at the time that Pryor claims to have had his run-in with police. In August 2009, Defendants moved for summary judgment, asserting that Pryor had not produced sufficient evidence to establish that McGovern and Reykjalin were the two officers who accosted and injured Pryor. An overview of the record is provided in the court's ruling on that motion. *See Pryor v. City of Chicago*, No. 07 C 2570, 2010 WL 431470 (N.D. Ill. Feb. 1, 2010). In short, Pryor could not, at the time of his deposition, recall any identifying characteristics that would enable him to establish that Defendants were the officers responsible for the incident. Pryor was unable to identify the officers in a photographic array, and he admitted that he could not recall any significant distinguishing traits of the offending officers. In addition, Pryor and the other eye-witnesses at the scene had divergent accounts of the events in question and offered several

inconsistent descriptions of the officers involved.  Pryor did testify, however, that he had written down a four-digit number that appeared on the offending officers' vehicle.  Though he no longer remembered the number and could not produce the writing, Pryor said, he had reported the number to his attorney, who Pryor identified as "Lawson Jersey."[1]  When pressed, Pyror stated that he believed the number might be # 1123, but he admitted that he was not certain.  Defendants testified that, on the evening in question, they were assigned to a marked patrol car displaying the beat number: # 1114.

In an attempt to defeat summary judgment on the issue of Defendants' identity, Plaintiff produced the declaration of retired attorney Joan Sorensen.  The declaration is neither dated nor notarized, but it does bear what appears to be Sorensen's signature.  Sorensen's declaration states that she met with Pryor at her law office in March 2006, shortly after the alleged incident.  At the time, Sorensen was a practicing lawyer with the firm of "Dombrowski and Sorensen."  During the March 2006 meeting, the declaration states, Pryor "indicated that he saw police car # 9674 in the alley at 4508 W. Adams on March 27, 2006."  A subsequent request to the Chicago Police Department under the Freedom of Information Act ("FOIA")–also purportedly signed by Sorensen–confirmed that Officers McGovern and Reykjalin were assigned to the patrol car bearing that number on the night of the incident.[2]

Plaintiff argued that Sorensen's declaration and the FOIA response, in combination with Pryor's own testimony, was sufficient to raise an issue of material fact as to whether Defendants were the officers who stopped and injured Pryor.  The court accepted Plaintiff's argument, though not without expressing reservations concerning the authenticity of Sorensen's declaration.  *See*

---

[1]  The record reflects that, at the time that he filed his complaint, Pryor was represented by attorney Robert Lutz at the law firm of Lunz & Jersey.

[2]  As the court explained in its earlier order, Defendants' patrol car, like all marked Chicago Police Department vehicles, would have displayed both the beat number (1114) and the car number (9674) on the outside of the car.

2

*Pryor*, 2010 WL 431470 at *9-11. First, the court explained, the declaration did not comply with the requirements of 28 U.S.C. § 1746 because it was undated. Second, Sorensen did not play any role in drafting the declaration. In fact, none of the attorneys in this case had actually met with Sorensen before her declaration was submitted. Instead, the declaration was written entirely by Plaintiff's counsel Ed Fox based on unauthenticated notes and other materials provided by Joe Dombrowski, Sorensen's former law partner. (Fox Aff. ¶ 4-8.)

At the time, Plaintiff represented to this court that the notes constituted "Ms. Sorensen's contemporaneous notes taken during her [initial] meeting with Plaintiff" and asserted that the notes served as "proof of Ms. Sorensen's first hand and personal knowledge of the facts stated in her affidavit." (Pl.'s Resp., D.E. 94 at 9.) Nevertheless, Fox admitted, he had no way of independently contacting Sorensen to confirm the accuracy of the notes or the declaration he had drafted. Instead, Fox simply provided the draft declaration to Dombrowski who promised to forward the document, in turn, to Sorensen. After a few days, Dombrowski returned to Fox a copy of the declaration bearing Sorensen's signature.

When defense counsel similarly contacted Dombrowski in an effort to reach Sorensen, Dombrowski refused to provide any forwarding information for Sorensen other than the mailing address: "General Delivery-Cayman Islands."[3] As a result, Defendants were unable to locate Sorensen in order to probe the validity and authenticity of the declaration. In an effort to provide Defendants with that opportunity, the court reopened discovery to permit the depositions of Sorensen and Dombrowski. The court also instructed Plaintiffs to assist in locating Sorensen for this purpose and warned that "should Sorensen fail to surface, evidence concerning her investigation will be barred." *Pryor*, 2010 WL 431470 at *11. Sorensen did indeed surface, but her

---

[3] As the court has previously noted, Dombrowski has a somewhat checkered history; his law license has been suspended three times, twice in incidents involving the unauthorized signing of another's name. *Pryor*, 2010 WL 431470 at *9.

3

deposition appears to have raised more questions than it answered. Accordingly, Defendants again move to strike Sorensen's declaration and seek leave to refile their motion for summary judgment. For the reasons explained below, the court grants Defendants' motion. Sorensen's affidavit is stricken in its entirety and Defendants are granted leave to renew their motion for summary judgment.

## II.    Sorensen's Testimony

In her deposition on March 31, 2010, Sorensen testified that she was "amazed" at having been contacted with respect to this litigation because she possessed no personal knowledge of Pryor's case. "I couldn't understand why I was being asked to give a deposition," Sorensen said. "I have no recollection of [Pryor] . . . The name did not ring a bell . . . I know nothing about this." (Sorensen Dep. at 23-24.) Sorensen further testified that she did not write the notes or the FOIA request attributed to her by Plaintiff and in her own purported declaration. (*Id.* at 27-29.) Nor does Sorensen know who prepared those documents; she testified that she did not recognize the handwriting and was unsure whether she had ever actually seen the documents before. She explained that she had regularly used a stamp of her signature in the conduct of her legal practice, but she no longer knew where that stamp was. The signature on the FOIA request letter, Sorensen acknowledged, may have been generated by that stamp. Sorensen confirmed that she had no recollection of ever meeting or speaking with Pryor, and she was unequivocal in stating that she did not know any facts related to his case, including those attributed to her in the declaration.

In fact, Sorensen testified that she had no recollection of ever having signed the declaration that Plaintiff presented to this court. Though she "presume[d]" that she must have seen the declaration at some point "because it contains information regarding myself," Sorensen initially stated that she was sure she had not seen any such document within at least the past year. (*Id.*

4

at 34-35.)[4] She nevertheless confirmed that the declaration did indeed bear what appeared to be her initials and signature:

> Q: Is that, in fact, your signature?
>
> A: That is, in fact, my signature.
>
> Q: And so then did you sign that document?
>
> A: Apparently I did.
>
> Q: When?
>
> A: I have no idea.

(*Id.* at 37.) After thoroughly reviewing the signed copy of the declaration, Sorensen modified her earlier testimony by saying: "It must have been sometime in September 2009 [that I signed the declaration]. So I have been wrong. I have some connection with this in the past year. I didn't recall that either." (*Id.* at 39.) While she acknowledged that the signature on the declaration was "absolutely" her signature, Sorensen nevertheless maintained that she could not remember ever having signed the document. Nor could she remember talking to anyone about the declaration or reviewing any of the notes or other documents referenced in the declaration. (*Id.* at 46-50.)[5]

---

[4] According to Fox, he sent the draft declaration by way of Dombrowski in late September 2009, roughly six months before Sorensen's deposition.

[5] Though Sorensen testified that she did not actually remember ever reviewing any records with respect to this case, she "assum[ed]" that she *would have* consulted her records before signing the declaration. (Sorensen Dep. at 49.) She explained that she based her *assumption* on the fact that the signed declaration itself represented that she had reviewed her notes and records. (*Id.*) In his brief, Plaintiff attempts to rely on Sorensen's testimony about what she would have done as evidence that Sorensen did in fact consult her records and therefore had personal knowledge of the case. The court finds this argument unworthy of serious consideration. At best, Sorensen's statement that she *may* have reviewed notes (of unknown origin) prior to signing the declaration constitutes unsupported speculation. The court is not required to give credence to such a "conclusory and unsupported assertion." *See Compania Administradora v. Titan International, Inc.*, 533 F.3d 555, 562 (7th Cir. 2008) (citing *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998)). Such a statement neither establishes what Sorensen actually did nor whether she has any first-hand knowledge of facts relevant to this case. To the contrary, Sorensen's repeated claims that she "know[s] nothing about this [case]" would seem to fatally undermine Plaintiff's argument. (Sorensen Dep. at 24.)

### III.     Sorensen's Declaration is Inadmissable

Rather than assuage the court's concerns regarding the declaration, Sorensen's testimony has cast more doubt on the validity and authenticity of that document.  Sorensen's bizarre inability to remember anything at all about the circumstances of her purported involvement in this case or the production of her declaration just six months earlier is particularly disquieting. Strikingly, neither Plaintiff nor Sorensen has offered any explanation for how Sorensen's signature came to appear on a declaration containing facts to which she cannot now attest and the signing of which she cannot now recall.  *See Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 623 (7th Cir. 2002) ("Affidavits, though signed under oath by the affiant, are typically and here written by the affiant's lawyer, and when offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy.")  Under the circumstances, the court cannot accept Sorensen's declaration.

What is clear at this point is that Sorensen herself purports to have no personal knowledge of Pryor's case or his claimed identification of the car number on Defendants' patrol vehicle.  An affidavit offered in opposition to summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED.R.CIV.P. 56(e).  It must be grounded in first-hand observation and experience, not based upon speculation, rumor, or intuition that is remote from such experience.  *See Visser v. Paccker Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc).  Sorensen's declaration fails to satisfy this essential requirement.  At her deposition, Sorensen repeatedly denied any knowledge or memory concerning Pryor, his case, or his claims.  She stated that she did not recall ever meeting Pryor, and she maintained that she had played no role in the compilation of the notes or

the FOIA request that Plaintiff has attributed to her. Nor could Sorensen recall having ever reviewed any of the documents pertaining to Pryor's case. She further stated that she had no recollection of signing the declaration, and she acknowledged that she could not conclusively attest to its accuracy. Even after being shown the referenced documents over the course of her deposition, Sorensen testified that her memory could not be refreshed and that she had no independent recollection of any of the relevant facts. In sum, Sorensen has admitted that she possesses neither personal knowledge nor any independent recollection of the facts set forth in her declaration. She is, therefore, not competent to testify to the matters contained therein.

**IV.     Notes Attributed to Sorensen are Unauthenticated**

Sorensen's declaration twice refers to "my notes," and Plaintiff has previously represented to the court that the notes and FOIA letter he produced were initially written by Sorensen. Sorensen has now testified that she had nothing to do with the production of those documents. She also stated that she does not recognize the handwriting in which the documents are written. Plaintiff devotes a great amount of space in his brief to ill-conceived arguments about why the contents of these documents are not hearsay. The more immediate problem for Plaintiff, however, is that neither Sorensen nor any other witness has properly authenticated the documents.

Plaintiff contends that Sorensen "authenticated and adopted" the notes by testifying that the documents were of the type that would typically have been included in a client's file at her law firm. (Pl.'s Resp. at 7.) Any statements from Sorensen about where the documents *may* or *should* have come from are of course entirely speculative and serve no authenticating purpose. To be admissible on summary judgment, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e), and the affiant must be a person through whom the exhibits could be admitted into evidence. *Article II Gun Shop, Inc. v. Gonzalez*, 441 F.3d 492, 496 (7th Cir. 2006); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987) ("Supporting materials designed to establish issues of fact in a summary judgment proceeding must be established

7

through one of the vehicles designed to ensure reliability and veracity-depositions, answers to interrogatories, admissions and affidavits.") (internal quotation marks omitted). Here, Sorensen testified that she could not recall ever having seen the documents before and that she had no personal knowledge as to their source or authorship. Her testimony does nothing to establish–and, in fact, does a great deal to undermine–the "reliability and veracity" of Plaintiff's proffered supporting materials. Plaintiff has thus failed to properly authenticate his supporting documents through the appropriate vehicle of a valid affidavit. The notes and the FOIA request that Plaintiff has erroneously attributed to Sorensen are, therefore, also stricken.

## **CONCLUSION**

This court emphasized in its earlier order that its denial of Defendants' summary judgment motion was predicated upon the authenticity and validity of Sorensen's declaration. Sorensen's subsequent testimony in this matter has made it abundantly clear that she has no personal knowledge of the facts set forth in that declaration. For that reason, Defendants' motion [112] is granted. Sorensen's affidavit and the unauthenticated supporting documents attached to it are stricken. Defendants are granted leave to renew their motion for summary judgment.

ENTER:

Dated: July 7 , 2010

_____
REBECCA R. PALLMEYER
United States District Judge